RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0458p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

ZLATA ILIC-LEE,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General,

*Respondent.*

Nos. 06-3494/4089

>

On Petition for Review of Orders
of the Board of Immigration Appeals.
No. A79 691 732.

Submitted: October 25, 2007

Decided and Filed: November 19, 2007

Before: MERRITT, ROGERS, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Marshal E. Hyman, Russell R. Abrutyn, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. Alison Marie Igoe, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

McKEAGUE, J., delivered the opinion of the court, in which ROGERS, J., joined. MERRITT, J. (p. 9), delivered a separate dissenting opinion.

---

## OPINION

---

McKEAGUE, Circuit Judge. Petitioner Zlata Ilic-Lee petitions this court for review of two Board of Immigration Appeals' ("BIA") decisions that (a) affirmed the Immigration Judge's ("IJ") denial of petitioner's motion for continuance, (b) vacated the IJ's denial of petitioner's motion to reopen, and (c) denied petitioner's direct motion to reopen. For the reasons that follow, we AFFIRM the decisions of the BIA and DENY the petitions for review.

### I. BACKGROUND

Petitioner Zlata Ilic-Lee is a Serbian citizen. On September 26, 1998, she entered the United States pursuant to a B-2 nonimmigrant visa with permission to remain until March 25, 1999.

On July 28, 2000, Ilic-Lee married a United States citizen. On October 16, 2001, her husband filed a Form I-130 Petition for Alien Relative on her behalf. On or about December 7, 2001, Ilic-Lee filed a Form I-485 Application to Register Permanent Residence or Adjust Status. On May 2, 2003, the Department of Homeland Security ("DHS")[1] requested that Ilic-Lee's husband submit an amended marriage certificate to reflect the correct number of Ilic-Lee's marriages (i.e., two rather than one). When Ilic-Lee's husband failed to respond, DHS denied the I-130 petition on October 3, 2003.[2] That same day, DHS issued a Notice to Appear that charged Ilic-Lee with having overstayed her visa and being subject to removal. In November 2003, she filed a motion to reopen the I-130 petition with DHS.

Ilic-Lee appeared and admitted the charges in a July 8, 2004 immigration court hearing wherein she requested adjustment of status and voluntary departure. She also requested a continuance to allow DHS to act on the motion to reopen that she filed. The IJ denied her request for a continuance, but nonetheless scheduled a future hearing for Ilic-Lee to submit all of her applications for relief.

At the January 14, 2005 hearing, the IJ denied both Ilic-Lee's renewed request for a continuance and an adjustment of status, but granted her 30 days in which to voluntarily depart. She filed an appeal of the IJ's denial of her motion for continuance with the BIA. She also filed a motion to reopen with the IJ. On February 16, 2005, the IJ denied her motion to reopen. Ilic-Lee appealed that decision to the BIA. On March 22, 2006, the BIA denied Ilic-Lee's appeal of the IJ's denial of her motion for continuance and vacated the IJ's denial of her motion to reopen for lack of jurisdiction. She petitioned this court for review of the BIA's decision. On or about June 21, 2006, Ilic-Lee filed a second motion to reopen, this one directly to the BIA. The BIA subsequently denied her motion to reopen on July 25, 2006. She petitioned this court for review of the BIA's denial of her motion to reopen. We subsequently consolidated the two appeals.

## II. ANALYSIS

### A. Motion for continuance.

We review the BIA's affirmance of the IJ's denial of petitioner's motion for continuance under an abuse-of-discretion standard. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). An abuse of discretion occurs if "the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Id*. (citing *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982)). Because the BIA did not summarily affirm or adopt the IJ's reasoning and provided an explanation for its decision, we review the BIA's decision as the final agency determination. *See Nikis v. Ashcroft*, 126 F. App'x 731, 736 (6th Cir. 2005); *see also Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).

An IJ "*ma*y grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29 (2003) (emphasis added). Here, the BIA's reason for its affirmance of the IJ's denial of the continuance motion was that "[i]t is not good cause to request a continuance to await the results of a collateral event, such as the filing of a motion to reopen visa petition proceedings, which may or may not result in an outcome favorable to the respondent at some uncertain, indefinite date in the future." J.A. 06-3494 at 5. The BIA noted that Ilic-Lee's original I-130 petition was denied in

---

[1] In March 2003, the Immigration and Naturalization Service was dissolved and its functions were transferred to DHS. For purposes of this opinion, we will refer to the relevant agency as DHS regardless of the name it had when the action was taken.

[2] Because the I-130 petition was denied, DHS shortly thereafter denied Ilic-Lee's I-485 petition.

October 2003 for failure to provide evidence and a motion to reopen filed with DHS in November 2003 had been pending "without apparent action, for over 14 months." J.A. 06-3494 at 6.

In *El Harake v. Gonzales*, El Harake requested a continuance from the IJ to allow time for the DHS to adjudicate his separate I-130 petition. 210 F. App'x 482, 489 (6th Cir. 2006). The court found that the IJ's denial of the motion for continuance was not irrational "because El Harake presented no evidence to show that the I-130 petition would be successful . . . ." *Id.* at 490.

In so holding, the *El Harake* court distinguished two recent Seventh Circuit cases that held an IJ's denial of a continuance was an abuse of discretion. *Id.* The *El Harake* court stated

> It cannot be the case that anytime an alien files an I-485 petition or has an I-130 petition filed on his behalf, the IJ is *required* to grant a continuance. Such a view would conflict with the discretion that the regulations explicitly provide to the IJ. *See* 8 C.F.R. § 1003.29 ("The Immigration Judge *may* grant a motion for continuance for good cause shown." (emphasis added)).

*Id.*

In *Subhan v. Ashcroft*, an alien requested a continuance from the IJ so that he could obtain labor certificates that would have permitted him to remain in the United States. 383 F.3d 591, 593 (7th Cir. 2004). The Seventh Circuit held that the IJ's denial of the continuance was an abuse of discretion because the IJ's statement that petitioner "'may be able to eventually acquire lawful permanent resident status by virtue of his employment,'" but he was "'not eligible for this form of relief at this time' . . . was not a *reason* for denying the motion . . . , but merely a statement of the obvious: that the labor departments hadn't yet acted." *Id.* The Seventh Circuit again held that an IJ's denial of a continuance to await adjudication of I-130 and I-485 petitions was an abuse of discretion when the IJ's decision was based on the failure of the alien's attorney to submit a copy of the I-485 to the IJ and the I-485 had been otherwise filed. *Benslimane v. Gonzales*, 430 F.3d 828, 830-31 (7th Cir. 2005).

The *El Harake* court explained "[w]hereas in *Subhan*, the IJ gave no reason for denying the continuance, and in *Benslimane*, the IJ gave an arbitrary reason, here, the IJ gave a rational reason: El Harake did not provide any evidence that suggested that he had any likelihood of success in adjudicating his I-485 petition." *El Harake*, 210 F. App'x at 490 n.15.

This case is analogous to *El Harake*. Here, the administrative record contained the following reasons for denying the motion:

> in the absence [of] evidence, establishing the assertions, the failure to timely file a motion for continuance and, given the fact that the respondent has already been granted seven months in this matter as a continuance during which time she could have submitted [the] appropriate documentation, that the respondent has failed to act in a timely manner to request the continuance and that there is nothing of record to establish that the respondent merits the exercise of this Court's discretion nor is there anything of record to establish a basis for the continuance.

J.A. 06-4089 at 31. Unlike the dissent, we find no evidence in the record to suggest that Ilic-Lee filed new documentary evidence to support her request for a continuance. For example, she did not submit the motion to reopen the I-130 petition she claimed she filed with DHS nor did she submit a copy of the second I-130 petition she claimed her husband filed on the same day as the IJ's decision. In fact, the only evidence in the administrative record, at the time of the hearing, was that Ilic-Lee was not eligible for any relief, no application for relief was pending, the I-130 filed on her behalf had been denied, and her I-485 also had been denied.

The present case is also distinguishable from a recent decision by this court that found an IJ's denial of a continuance was an abuse of discretion. *See Badwan v. Gonzales*, 494 F.3d 566 (6th Cir. 2007). First, Badwan's motion for a continuance was unopposed by the government while Ilic-Lee's motion was opposed. *See Cordova v. Gonzales*, No. 06-3917, 2007 WL 2386488, at *6 (6th Cir. August 21, 2007) (unpublished) (finding *Badwan* distinguishable and holding that the BIA's affirmance of IJ's denial of a continuance was not an abuse of discretion). Second, Badwan was requesting his first continuance; Ilic-Lee had considerable time to gather the relevant evidence.[3] *See id.* Third, the IJ had little reason to believe Badwan would not be able to obtain an adjustment of status whereas the IJ in Ilic-Lee's case knew that she had already been denied once and she provided no evidence that an application was even pending let alone likely to be approved despite the passage of a considerable amount of time between DHS's request for evidence, the subsequent I-130 denial, the first hearing, and the second hearing.[4] *See id.*

Under the circumstances here, it was not an abuse of discretion for the BIA to affirm the IJ's denial of petitioner's motion for continuance.[5]

**B. Motion to reopen with IJ.**

We review *de novo* the BIA's decisions on questions of law. *See Denko*, 351 F.3d at 726; *see also Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005). "An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, *unless jurisdiction is vested with the Board of Immigration Appeals.*" 8 C.F.R. § 1003.23(b)(1) (2003) (emphasis added). Here, the BIA found that the IJ lacked jurisdiction to render a decision on petitioner's motion to reopen because Ilic-Lee filed a direct and timely appeal to the BIA of the IJ's January 14, 2005 decision. J.A. 06-3494 at 6.

Petitioner admits that the "IJ is divested of jurisdiction over a motion filed after an appeal is filed with the BIA," but argues that the "BIA treats a motion to reopen that is filed during a pending appeal as a motion to remand." Petitioner's Br. 06-3494 at 12-13 (citing 8 C.F.R. § 1003.2(b)(1) and BIA Practice Manual 5.6(h)). These regulations do not support petitioner's argument because they refer to a motion filed with the BIA in the first instance while an appeal is pending, *not* the appeal of an IJ's decision on the merits in which she lacked jurisdiction. Accordingly, the BIA did not err when it found that the IJ lacked jurisdiction to render a decision on petitioner's motion to reopen.

**C.  Motion to reopen with BIA.**

8 C.F.R. § 1003.2(a) provides that "[t]he decision to grant or deny a motion to reopen . . . is within the discretion of the Board . . . ." Accordingly, we review the BIA's denial of a motion to reopen under an abuse-of-discretion standard. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). "This standard requires us to decide whether the denial of [the] motion to reopen . . . was

---

[3]Although the IJ denied her first continuance motion on July 8, 2004, the IJ nonetheless granted her a *de facto* continuance by allowing her to submit all of her applications for relief at the next hearing to be held on January 14, 2005. At the January 14, 2005 hearing, the IJ again denied petitioner's request for a continuance.

[4]Contrary to the dissent's suggestion, our decision today does not create a conflict with this court's precedent or that of other circuits because the cases cited by the dissent are distinguishable, as discussed *infra*.

[5]We note that the dissent seems to ignore that our review is not *de novo* here. Rather, we are bound to affirm the BIA's ruling unless it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Abu-Khaliel*, 436 F.3d at 634 (citation omitted).

made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (alterations in original) (citations and quotation marks omitted). "The Supreme Court has made clear that reopening is discretionary with the BIA and that the BIA retains broad discretion to grant or deny such motions." *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (citing *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992)). "Because the BIA has such broad discretion, a party seeking reopening . . . bears a 'heavy burden.'" *Id.*

A motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1) (2003). It "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ." *Id.* There are "'at least' three independent grounds on which the BIA might deny a motion to reopen–failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Doherty*, 502 U.S. at 323 (citation omitted).

Here, the BIA denied the motion to reopen because Ilic-Lee had not established that she was *prima facie* eligible for adjustment of status inasmuch as: (1) the second I-130 petition had not been approved; (2) the motion to reopen the denial of the first I-130 petition remained pending; and (3) the petitioner submitted "minimal and insufficient" documentation to establish the bona fides of her marriage.[6] J.A. 06-4809 at 7.

"A *prima facie* showing of eligibility for relief is required in motions to reopen." *Alizoti*, 477 F.3d at 451-52; *see also* 8 C.F.R. § 1003.2(c). "*Prima facie* evidence, according the BIA, is evidence that 'reveals a reasonable likelihood that the statutory requirements for relief have been satisfied.'" *Id.* at 452 (quoting *Matter of S-V-*, 22 I. & N. Dec. 1306, 1308 (BIA 2000)). Even if an I-130 petition is pending, the BIA has found that it *may* grant a motion to reopen if:

> (1) the motion is timely filed; (2) the motion is not numerically barred by the regulation; (3) the motion is not barred by *Matter of Shaar*, 21 I. & N. Dec. 541 (BIA 1996), or any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition solely on *Matter of Arthur* [20 I. & N. Dec. 475 (BIA 1992)].

*Matter of Velarde-Pacheco*, 23 I. & N. Dec. 253, 256 (BIA 2002). The BIA explained that "our decision today does not *require* Immigration Judges to reopen proceedings pending adjudication of an I-130 visa petition in every case in which respondent meets all five of the aforementioned factors." *Id.* at 257 (emphasis added). 8 C.F.R. § 204.2 sets forth the evidentiary standard for establishing a marriage is bona fide:

---

[6] In its decision, the BIA specifically discussed some of the evidence it reviewed:

> [C]ounsel has attached to the instant motion a copy of the marriage certificate for the respondent and her husband, an undated letter from a mortgage broker, and photocopies of photographs of what is presumably the respondent and her husband, although counsel has not provided any captions or other identifying information to indicate the names of the individuals depicted in the photographs, or the time and place of the photographs.

J.A. 06-4809 at 7 n.2; *see also* J.A. 06-4809 at 42-86.

(B) Evidence to establish eligibility for the bona fide marriage exemption. The petitioner should submit documents which establish that the marriage was entered into in good faith and not entered into for the purpose of procuring the alien's entry as an immigrant. The types of documents the petitioner may submit include, but are not limited to:

> (1) Documentation showing joint ownership of property;
> (2) Lease showing joint tenancy of a common residence;
> (3) Documentation showing commingling of financial resources;
> (4) Birth certificate(s) of child(ren) born to the petitioner and beneficiary;
> (5) Affidavits of third parties having knowledge of the bona fides of the marital relationship (Such persons may be required to testify before an immigration officer as to the information contained in the affidavit. Affidavits must be sworn to or affirmed by people who have personal knowledge of the marital relationship. Each affidavit must contain the full name and address, date and place of birth of the person making the affidavit and his or her relationship to the spouses, if any. The affidavit must contain complete information and details explaining how the person acquired his or her knowledge of the marriage. Affidavits should be supported, if possible, by one or more types of documentary evidence listed in this paragraph); or
> (6) Any other documentation which is relevant to establish that the marriage was not entered into in order to evade the immigration laws of the United States.

8 C.F.R. § 204.2 (a)(1)(iii)(B) (2003).

Here, unlike in her motion for a continuance to the IJ, the record suggests that Ilic-Lee provided the following relevant evidence: an affidavit from her husband that states the marriage was in good faith; a corrected copy of their marriage certificate; two expired "green cards" for her children; a letter from a mortgage company that states the owner met with petitioner and her husband in 2003 when they applied for a loan; and multiple undated, unexplained photographs. It appears the administrative record also contains other documentary evidence relevant to the marriage, including: a rental agreement, a cable bill, an energy bill, and a joint bank statement.

Based on the current administrative record, the BIA did not abuse its discretion when it determined that the petitioner's evidence was "minimal and insufficient" and therefore failed to establish the existence of a bona fide marriage. While at best, the evidence might demonstrate a legal marriage, it does not suggest a bona fide marriage for purposes of immigration laws because it fails to show that petitioner's marriage was "entered into in good faith and not entered into for the purpose of procuring the alien's entry as an immigrant." 8 C.F.R. § 204.2 (a)(1)(iii)(B).

First, while the affidavit from petitioner's husband is some evidence of a bona fide marriage, it does not hold much weight as it is not from a "third party" nor is it supported by "one or more types of documentary evidence."[7] *See* 8 C.F.R. § 204.2(a)(1)(iii)(B)(6); J.A. 06-4089 at 59. The marriage certificate is evidence that a legal marriage occurred, but it does not shed any light on whether the marriage was entered into in good faith. Petitioner also attempts to rely on her children's two expired "green cards" to suggest that I-130 applications were approved for them,

---

[7]The government contends that the petitioner's husband "admitted that he failed to submit the necessary paperwork for the daughters." *See* Respondent's Br. 06-4089 at 22. The better interpretation, however, is that while he submitted the paperwork to DHS on the children's behalf, their lawyer advised them that they did not need to submit copies of those documents during petitioner's immigration proceedings and filings.

thereby rendering the marriage bona fide. J.A. 06-4089 at 63-64. Yet, there is no evidence in the record that connects the petitioner's husband to obtainment of the "green cards," let alone any evidence about the basis for their issuance.[8]  While the letter from the mortgage company is arguably some evidence of a "relationship" between the petitioner and her husband, it does not show joint ownership of property or the commingling of financial resources inasmuch as the letter referred only to their applying and the owner helping them qualify for a loan, not that they had a joint loan. *See* 8 C.F.R. §§ 204.2(a)(1)(iii)(B)(1),(3); J.A. 06-4089 at 66. To the extent it is used as other evidence, it does not provide much useful information about whether the marriage was bona fide because it only referred to a "relationship" in general without providing any other information about that relationship and it is not supported by "one or more types of documentary evidence." *See* 8 C.F.R. § 204.2(a)(1)(iii)(B)(5),(6). Likewise, while the undated and unexplained photographs might arguably provide slight evidence of a relationship, they are not evidence of a bona fide marital relationship, and particularly so here where they have been provided without any context. The rental agreement that has both the petitioner and her husband's signature is some evidence of a bona fide marriage in that it could suggest the joint tenancy of a common residence. *See* 8 C.F.R. § 204.2(a)(1)(iii)(B)(2); J.A. 06-4809 at 134-39. That said, its evidentiary value is limited here because the rental agreement largely is incomplete inasmuch as the initials by various provisions are incomplete, many other internal aspects of the form are incomplete, and their signatures are undated. The cable bill is not helpful as it is in her husband's name only and at best reflects that at some point he had cable service for a month at a purported address in which they lived. J.A. 06-4089 at 141. The energy bill is equally unhelpful. J.A. 06-4089 at 142. It provides no information as to who gets billed for the services. In addition, it details service at two different residences with service dates that do not coincide with the dates that the petitioner and her husband lived at those respective residences as reflected in the second I-130 filed by petitioner's husband.[9] *Compare* J.A. 06-4089 at 142 *with* J.A. 06-4089 at 104. The joint bank statement is evidence of commingling of financial resources. *See* 8 C.F.R. § 204.2(a)(1)(iii)(B)(3); J.A. 06-4089 at 140. However, that the petitioner only provided a joint bank statement for a one month period in 2004 limits its evidentiary value because the petitioner and her husband have been married since 2000.

While petitioner provides some evidence of a legal marriage, the weight of the evidence is rather light in terms of whether the marriage was bona fide and, in any event, is not strong enough to show that the BIA abused its discretion. Accordingly, we uphold the BIA's decision inasmuch as it provided a rational explanation, did not depart from established policies, and did not rest its decision on an impermissible basis.

### III. CONCLUSION

This case is about whether the petitioner has established that the BIA abused its discretion when it applied the immigration laws to her case. On the current record, the petitioner has failed to do so. It is role of Congress, not courts, to ensure that immigration laws comport with family, societal, and other values. And, while we are sympathetic to petitioner's claim, we are bound to follow the BIA's rulings unless it abused its discretion.

For all of these reasons, we AFFIRM the BIA's decisions and DENY the petitions for review.

---

[8]Moreover, as the government noted, because the divorce decrees from her previous marriages suggest that the custody of her children was awarded to her respective ex-husbands, the omission of other types of documentary evidence to support this contention is particularly conspicuous. Respondent's Br. 06-4809 at 9-10; J.A. 06-4809 at 111-33.

[9]What is more, it may suggest that the petitioner and her husband maintain two separate households.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. This immigration case is about the courts and family values and the tradition that administrative and judicial institutions should exercise restraint and give deference to the judgment of Congress, the elected representatives of the people. Congress has mandated that in immigration cases administrative and judicial institutions should observe the sanctity of marriage between a man and a woman so that the families of American citizens who take a foreign spouse will not be split up by deportation, that mothers will not be separated from fathers and children and made refugees in a foreign land by the heavy hand of the federal government.

For reasons quite similar to those given by the court in *Subhan v. Ashcroft*, 383 F.3d 591 (7th Cir. 2004), *Benslimane v. Gonzales*, 430 F.3d 828 (7th Cir. 2005), and *Badwan v. Gonzales*, 494 F.3d 566 (6th Cir. 2007), I would conclude that the refusal to grant a continuance in the case was a gross abuse of discretion. The record is full of documentation that petitioner and her husband were married legally, legitimately and in good faith. The immigration judge should have given petitioner a continuance to dot the "i's" and cross the "t's" so that she could get her status adjusted to become a permanent resident. The majority opinion is inconsistent with the three cases cited above. The marriage records recited in the majority opinion (*i.e.*, a marriage license, husband's affidavit, children's green cards, mortgage company letter concerning a home loan, rental agreement, joint bills, joint bank statement) convince me that the couple were legally married and living together as husband and wife and should have convinced the immigration judge at least to grant a continuance to the petitioner to supplement the record with the additional information necessary to either quiet or prove whatever doubts the judge had about the legitimacy of their marriage. I would not create a circuit and intercircuit conflict on the question of the application of the standard for a continuance in these administrative cases. The result seems to show anti-immigrant bias in the administrative agency or a complete disinterest in reaching a just result that avoids breaking up a family. The case again demonstrates the rote way the immigration courts are treating the family values that Congress was trying to promote in creating the marriage exception to deportation.