NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0647n.06

No. 12-3975

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
*Jul 12, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GELLE MOHAMED GELLE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW |
| ERIC H. HOLDER, JR., Attorney General, | ) | FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| Respondent. | ) | |
| | ) | |

BEFORE:  GIBBONS and WHITE, Circuit Judges, and COHN, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.**  Following the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") by an Immigration Judge ("IJ"), Petitioner Gelle Mohamed Gelle ("Gelle") appealed to the Board of Immigration Appeals ("BIA"), arguing that the IJ improperly rejected his application based on a finding that he was not credible.  The BIA affirmed the IJ's decision, and Gelle appeals.  We DENY Gelle's petition for review.

**I.**

The following facts are taken from Gelle's testimony before the IJ.  Gelle was born in Mogadishu, Somalia on January 1, 1983.  He is a member of the Tumal minority group, a clan that

---

[*]The Honorable Avern Cohn, United States Senior District Judge for the Eastern District of Michigan, sitting by designation.

occupies a low social status in Somalia. The Tumal are oppressed by the majority clan, the Hawiye, who possess most of the power in Somalia. The Tumal do not have weapons or the means to protect themselves, and the Somali government is weak.

As a child, Gelle was frequently abused by the Hawiye. For example, during a soccer game with other children from his neighborhood, Gelle had "an issue" with a Hawiye boy. Gelle apologized, but the boy told Gelle that he would kill him. After leaving the field, the Hawiye boy came back with his brothers, who were carrying guns. Gelle ran away, jumped over a wall, and the Hawiye boys opened fire on him, but Gelle managed to escape.

In a separate incident, Gelle was carrying a letter from his brother to a Hawiye girl whom his brother was dating when a group of Hawiye men stopped and searched him. Dating between the Tumal and Hawiye clans is strictly forbidden. The men found the letter and began beating Gelle, eventually placing him in handcuffs. They put out their cigars on his body and instructed Gelle to tell his brother that if he did not stop dating the Hawiye girl, they would kill Gelle and his brother.

Approximately one month later, a group of Hawiye men attacked Gelle's family and house. They entered Gelle's home at night and opened fire on his father and brother, killing both. The men beat Gelle with their guns and boots, leaving a scar on his chin. Gelle escaped with his mother, brother, and one of his sisters, but the men abducted his other sister, Sophia. Gelle's family has not heard from her since that night. Before leaving, the men told Gelle that if his family did not leave by the following night, the men would return and kill them all.

Gelle and his family fled to Kenya, where they separated. Gelle and his brother traveled to Nairobi to find work, while his mother and sister went to a refugee camp. Gelle has not had much contact with his mother and sister since the separation. While in Kenya, Gelle applied for refugee status in the United States along with his neighbors who told him that someone in the United States was sponsoring refugees. Gelle testified that his neighbors told him to use the name "Farah Ali Adbe" and that he would become part of their family for the purposes of the application. When he was interviewed by an immigration officer in Kenya, he gave the officer false information at the encouragement of the neighbor family, and his asylum claim was rejected.

Gelle lived in Kenya as an undocumented immigrant for eight years, but when violence erupted against foreigners as a result of the Kenyan election, he traveled to Malaysia. He lived in Malaysia for one year and five months, and married his wife while he was there. Gelle entered the United States on October 21, 2009, and has not left since.

## II.

The Department of Homeland Security filed a notice to appear with the Immigration Court on December 19, 2009, charging Gelle with being a removable alien. On February 8, 2010, Gelle admitted the factual allegations in the notice, conceded the charge of removability, and filed his application for asylum, withholding of removal, and relief under the CAT.

On September 30, 2010, an IJ held a removal hearing and a Somali interpreter translated for Gelle. After hearing testimony from Gelle, the IJ found that he was not a credible witness and

denied his application. The BIA denied Gelle's appeal, reasoning that the IJ's determination that Gelle was not credible was not clearly erroneous given Gelle's fraudulent asylum application.

## III.

### A. Standard of Review

An alien seeking asylum must establish that he is a refugee, 8 C.F.R. § 1208.13(a), which is defined as an individual "who is unable or unwilling to return to" his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant who establishes past persecution is presumed to have a well-founded fear of future persecution based on the same claim. 8 C.F.R. § 1208.13(b)(1). A request for asylum is automatically considered to include a request for withholding of removal, 8 C.F.R. § 1208.3(b), which requires that the alien demonstrate that it is "more likely than not" that he will be persecuted on account of a statutorily enumerated ground. *INS v. Stevic*, 467 U.S. 407, 429–30 (1984). Similarly, in order to be eligible for withholding of removal under the Convention Against Torture, an applicant must establish that it is more likely than not that he will be tortured if removed. 8 C.F.R. § 1208.16(c)(2). The more-likely-than-not standard is more stringent than the well-founded-fear standard used in asylum determinations, and an applicant who cannot satisfy the standard for a grant of asylum also fails to satisfy the standard for withholding of removal. *See Dorosh v. Ashcroft*, 398 F.3d 379, 383–84 (6th Cir. 2004).

Because the BIA did not summarily adopt the IJ's decision, this court reviews the BIA's decision as the final agency determination. *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007). Although the testimony of the applicant may be sufficient to satisfy the applicant's burden of proof, the applicant must satisfy the IJ that "the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). The IJ must consider the totality of the circumstances and all relevant factors in making a credibility determination and may base the determination on:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim[.]

8 U.S.C. § 1158(b)(1)(B)(iii). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**B. Analysis**

Gelle argues that the IJ gave undue weight to his false statements in finding that he lacked credibility. The government responds that the IJ properly relied on inconsistencies in Gelle's asylum application and testimony in finding Gelle incredible, and that because his application is based solely on his own statements regarding past persecution, the IJ properly denied his application for asylum.

The IJ relied on two incidents for its finding that Gelle lacked credibility: (1) Gelle's 2007 asylum application, and (2) Gelle's statements in court that he had not used another name or previously filed a refugee application. At the start of the asylum hearing, Gelle testified that he had

never used any name other than Gelle Mohamed Gelle. However, during cross-examination the government asked Gelle whether he had ever applied for refugee status in the United States, to which he replied "No, personally, no, I did not." Gelle testified that he applied for asylum in conjunction with neighbors who told him that somebody was sponsoring refugees in the United States. He claimed that he was told to take the name "Farah Ali Adbe" and "be part" of the family that was applying for asylum, but insisted that it was not his idea to do so. Gelle also admitted that he gave the immigration officer in Kenya false information in connection with his asylum application.

The IJ found that Gelle was not a credible witness. In addition to outlining the inconsistencies mentioned above, the court found that Gelle had a "propensity to lie in order to obtain status in the United States." The IJ explained:

> [T]his Court has excused some acts of misconduct, including incorrect information provided to Government officials when committed by asylum applicants due to the high stakes of an asylum applicant. However, the Court was concerned and troubled by the facts in this case. Even after acknowledging the fraudulent application, the respondent continued to not take responsibility, indicating it was not his idea, he was forced to do it. Ultimately, he acknowledged he did it because he wanted to come to the U.S. This is not in any way an excuse for committing fraud. The Court finds this type of behavior undermines the refugee and asylum process and harms many legitimate asylum seekers fleeing human rights abuses around the world.

The IJ noted that Gelle's testimony regarding his experiences in Somalia could have established past persecution and that "[b]ut for the 2007 refugee application, the Court would have been inclined to grant relief." However, because Gelle's application was supported only by his testimony and the court found that Gelle was an incredible witness, the IJ denied Gelle's application. The BIA affirmed the IJ's decision after finding that the adverse credibility determination was not clearly

erroneous, noting that Gelle admitted filing an earlier refugee application after being confronted by the government, and that Gelle acknowledged that he gave false information to the immigration officer who interviewed him in Kenya.

In *Nabhani v. Holder*, 382 F. App'x 487 (6th Cir. 2010) (unpublished), Nabhani was an Iranian citizen who claimed asylum in the U.S. on the basis of alleged harassment by the Iranian government because of his father's political involvement. *Id.* at 488. The IJ did not find Nabhani's testimony to be credible and denied his requests for relief. *Id.* at 489. On appeal, this court noted numerous "inconsistences, omissions, and implausibilities" in Nabhani's application and testimony. *Id.* at 490. Additionally, this court noted that Nabhani admitted to using false documents and a false name to enter Canada and Mexico and to file an asylum claim to Canadian officials. *Id.* at 490–91. This court concluded that Nabhani's inconsistent statements, exaggerations, omissions, and failure to provide corroborating evidence would not compel a reasonable adjudicator to find Nabhani credible. *Id. See also Samad v. Holder*, 462 F. App'x 109, 110 (2d Cir. 2012) (unpublished) (IJ reasonably relied on applicant's previous filing of a fraudulent asylum application in Canada in making an adverse-credibility determination); *Sai Hua Liu v. Gonzales*, 239 F. App'x 687, 689 (2d Cir. 2007) (unpublished) ("Filing a knowingly false asylum application casts a serious shadow on an applicant's overall credibility. While applicants should be encouraged to recant false statements and withdraw false applications, the agency is not required to overlook such falsities in making its ultimate determination."); *Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) ("[A] single instance

of false testimony may . . . infect the balance of the alien's uncorroborated . . . evidence."); *Laurent v. Ashcroft*, 359 F.3d 59, 64–65 (1st Cir. 2004).

Since the passage of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, IJs are permitted to consider a wide range of circumstances in determining whether an applicant is credible. 8 U.S.C. § 1158(b)(1)(B)(iii). This altered previous law in our circuit that held that an IJ could only base a credibility determination on "issues that went to the heart of the applicant's claim." *See El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009) (internal quotation marks and brackets omitted). Gelle's case is an unfortunate one. Although it is true that the IJ noted that had Gelle been a credible witness his testimony could have established past persecution, the fact remains that Gelle filed a false asylum application in 2007 and initially denied having ever used an alias.[1] In the face of this evidence, a reasonable adjudicator would not be compelled to find Gelle credible.

**IV.**

Accordingly, we DENY Gelle's petition.

---

[1]Gelle argues that false statements must be material to the alien's claim in order for an IJ to properly rely on them, citing *Mapouya v. Gonzales*, 487 F.3d 396 (6th Cir. 2007). However, Gelle misunderstands the law—*Mapouya* is inapplicable because the asylum claim at issue in that case was filed prior to the effective date of the REAL ID Act. *See id.* at 404–05.