In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3965

SHAIKH W. AHMED,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,
Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A76-773-978

ARGUED AUGUST 8, 2006—DECIDED OCTOBER 16, 2006

Before MANION, ROVNER, and SYKES, *Circuit Judges.*

PER CURIAM. Shaikh Ahmed, who overstayed a visitor's visa, conceded removability but contended that he was "grandfathered" under section 245(i) of the Immigration and Nationality Act ("INA")—which means that he would be entitled to apply for adjustment of status to become a permanent resident when a visa became available. Ahmed's grandfathered status was based on a family-based visa petition his sister filed on his behalf. He informed the Immigration Judge ("IJ") about that petition, but then requested a continuance to simultaneously pursue adjust-

ment of status through the labor certification process. The IJ denied a continuance because no labor certification application had been filed at the time of the hearing. But the IJ did not address the family-based visa petition that *had* been filed. Ahmed now contends the decision was unreasoned. We grant his petition for review.

## I.  Background

Ahmed, a native and citizen of Pakistan, came to the United States in September 1994 and overstayed his six-month visitor's visa. In spring 2003 the Immigration and Naturalization Service (now Department of Homeland Security ("DHS")), began removal proceedings against him for overstaying. He had a hearing before an IJ on May 9, 2003, and was granted a continuance to get a lawyer.

At his second hearing seven months later, Ahmed conceded removability but explained that he was attempting to adjust his immigration status to legal permanent resident because he was grandfathered under section 245(i) of the INA. His grandfathered status, he said, was based on a family-based visa petition—filed by his sister in 1995—naming him as a beneficiary. That petition, he admitted, did not automatically entitle him to a visa at the time of the hearing or to immediately apply for adjustment of status, but it did entitle him to apply for adjustment of status, without leaving the United States, when a visa became available.

At the hearing Ahmed sought a continuance so that he could pursue a visa through an employment-based visa application. Ahmed told the IJ that his employer had begun the process of obtaining a labor certification that he planned to file in support of an employment-based visa application. Confronted with the possibility that Ahmed might later become eligible for permanent resident status,

the IJ asked the DHS attorney whether the agency had a policy on what to do with aliens in Ahmed's position. Counsel said it did not, but opposed the continuance nonetheless.

The IJ denied the continuance. Without addressing the effect of the family-based visa petition filed by Ahmed's sister, the IJ said, "I'm going to find that you're not eligible for permanent resident status at this time. But you may be eligible in the future, but you're not now, and since you violated your visitor status, I have to enter a departure order." The IJ noted Ahmed's grandfathered eligibility to seek adjustment of status when a visa became available, but decided that since Ahmed had not yet filed his labor certification, he was not "prima facie" eligible for adjustment of status. Therefore, he had not shown good cause for the "indefinite continuance" that he sought. "Even if a labor certification is filed," added the IJ, "this still would not mean that the respondent is prima facie eligible for adjustment of status under Section 245 of the Act." The IJ concluded the proceedings by granting Ahmed voluntary departure.

Ahmed appealed to the BIA, arguing generally that the IJ's decision to deny the continuance was unreasoned and that it deprived him of his right to pursue adjustment of status. The BIA affirmed. It too focused on the labor certification as a basis for adjustment of status without commenting on the fact that Ahmed was the beneficiary of a family-based visa petition. The BIA stated that at the time of hearing, "the respondent admitted that a labor certification had not yet even been filed on his behalf, much less approved." The BIA observed that "the respondent had not shown that he was prima facie eligible for any relief," and agreed that Ahmed was not entitled to "an indefinite continuance pending the filing and anticipated approval of a labor certification."

In his petition for review, Ahmed argues that the IJ and BIA wrongly concluded that he was not prima facie eligible for relief. He maintains that, in fact, he was eligible for adjustment of status on account of his status as a grandfathered alien by virtue of the visa petition filed by his sister. And, anticipating a jurisdictional problem because of the discretionary nature of the IJ's decision, Ahmed argues that we have jurisdiction to review this particular discretionary decision because the IJ and BIA stripped him of his right to pursue adjustment of status under section 245(i) without giving a reason consistent with the statute, contrary to *Subhan v. Ashcroft*, 383 F.3d 591 (7th Cir. 2004).

## II.  Discussion

Before addressing our jurisdiction, we summarize the so-called grandfather provisions of section 245(i). Pursuant to 8 U.S.C. § 1255(i), an alien who overstays his visa is grandfathered under section 245(i) of the Immigration and Nationality Act and therefore can apply for adjustment of status without leaving the United States if he or she is the beneficiary of a visa petition or labor certification application filed before the end of April 2001. The alien cannot file the application for adjustment of status, though, until a visa has become available, 8 U.S.C. §§ 1255(a)(3), 1255(i)(2)(B), and the regulations refer to an alien whose visa has become available as "eligible" to apply for adjustment of status, 8 C.F.R. §§ 245.10(b)(2), 1245.10(b)(2). Thus, a grandfathered alien is *entitled to apply* for adjustment of status but is not *prima facie eligible* for adjustment of status until the visa becomes available. *Compare* 8 U.S.C. § 1255(i)(1), *with* 8 C.F.R. §§ 245.10(b)(2), 1245.10(b)(2). That creates a sort of "limbo" for properly grandfathered aliens whose visas are still not available by the time they are ordered to appear for removal proceedings. As counsel

for the government admitted, the immigration agency has offered no guidance on how these cases ought to be handled.

By requesting a continuance to pursue a labor certification application, Ahmed attempted to speed up his *eligibility* for adjustment of status. He believed that obtaining an employment-based visa would be faster than waiting for his priority date on his sister's petition to become current. Ahmed argues that the IJ erred in denying a continuance because the fact that he was grandfathered and waiting for the issuance of a visa on his sister's petition was "good cause" to warrant the grant of a continuance.

Ahmed is correct that a continuance may be granted for "good cause." 8 C.F.R. § 1002.39; *Subhan*, 383 F.3d at 595. But since the denial of a continuance is a discretionary decision, the Attorney General's response is that we lack jurisdiction to review it. True, we are barred from reviewing most discretionary decisions, including the denial of a continuance by an IJ. 8 U.S.C. § 1252(a)(2)(B)(ii); *Subhan*, 383 F.3d at 595. But we have held that § 1252(a)(2)(B) does not bar us from reviewing a decision that would, without stated reasons consistent with the statute, operate to prevent an alien from pursuing statutory rights. *Subhan*, 383 F.3d at 595. And that situation exists here. Ahmed is statutorily entitled under § 1255(i) to adjust his status when a visa becomes available, but the decisions by the BIA and IJ ordering his removal effectively prevent him from doing so. To adjust status, an alien must be physically present in the United States. 8 C.F.R. §§ 245.10(b)(1), 1245.10(b)(1).

To determine whether we have jurisdiction, therefore, we must decide whether the IJ gave a reason consistent with § 1255(i) for denying Ahmed the right to apply for adjustment of status. *Subhan*, 383 F.3d at 595. In *Subhan* the only reason the IJ gave for denying a grandfathered alien's request for a continuance was that he was not

yet eligible for relief. *Id.* at 593. We characterized that statement as an explanation about the posture of his case—not a reason to deny a continuance—and granted the petition for review. *Id.* We held that any reason consistent with the statute, like foot-dragging, criminal activity, or lack of merit to his application, could have justified the IJ's decision. *Id.* at 593-94; *Pede v. Gonzales*, 442 F.3d 570, 571 (7th Cir. 2006). But without such a reason, the agency's action could not stand. *Subhan*, 383 F.3d at 595.

Here, as in *Subhan*, the IJ's reason for denying Ahmed's request for a continuance was that he was not yet eligible to apply for adjustment of status because the paperwork to pursue the labor certification process had not been filed. The Attorney General argues that Ahmed's case is different than *Subhan* because there the alien's labor certification application had *already* been filed at the time of the hearing. That may be a distinction, but it is a distinction without a difference because it misses a more important point: Ahmed was already grandfathered and waiting for a visa through his family-based visa petition. Ahmed's pursuit of the additional labor certification application was simply an effort to speed up the issuance of the visa.

We cannot say that the refusal to grant a continuance was reasoned where the IJ ignored the effect of Ahmed's family-based visa petition. The IJ knew that Ahmed's sister had filed the petition and that he was simply waiting for his priority date to become available. *Hernandez v. Ashcroft*, 345 F.3d 824, 842-43 (9th Cir. 2003) (explaining that IJ's knowledge of alien's priority date meant that IJ knew family visa petition had been approved). The Attorney General's response is that Ahmed could not apply for adjustment of status on the basis of his sister's petition because at the time he sought the continuance, an immigrant visa was not "immediately available" to him. 8 U.S.C. §§ 1255(a)(3), 1255 (i)(2)(B). Apparently, in December 2003,

when Ahmed sought the continuance, the priority date for family-based visa petitions like his was February 1, 1992—meaning that only petitions filed before that date were current as of December 2003. 8 C.F.R. § 245.1(g)(1); U.S. Department of State, Visa Bulletin (December 2003) *reprinted at* http://www.immigration.com/newsletter/2003-12.html. Since Ahmed's sister did not file the petition until 1995, the Attorney General continues, an immigrant visa was not immediately available to Ahmed in December 2003, and he was not eligible to apply for adjustment of status at that time. *Hernandez*, 345 F.3d at 842-45 (explaining process by which immigrant visas become current according to priority dates).

But he was grandfathered and therefore statutorily *entitled* to apply. To say that he was not yet eligible is, as we held in *Subhan*, simply a statement of the procedural posture of the case. The absence of an immediately available visa is not a reason to deny a continuance "but merely a statement of the obvious." *Subhan*, 383 F.3d at 593. *But see Ahmed v. Gonzales*, 447 F.3d 433, 437-38 (5th Cir. 2006) (holding that denial of continuance because grandfathered alien did not yet possess immigrant visa is not abuse of discretion); *Zafar v. U.S. Att'y. Gen.*, 426 F.3d 1330, 1335-36 (11th Cir. 2005) (same). The alien in *Subhan* did not have a visa immediately available to him at the time of the hearing because the Department of Labor had not approved his labor certification application by that point (and a visa does not become immediately available at least until the labor certificate is approved, 8 U.S.C. § 1182(a)(5); *Zafar*, 426 F.3d at 1336). *Subhan*, 383 F.3d at 593. Ahmed's case is no different; he did not have a visa immediately available to him at the time of the hearing because he was waiting for his priority date on his sister's visa petition to become current. Accordingly, we GRANT the petition for review and REMAND to the agency for proceedings consistent with this opinion.

A true Copy:

     Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*