RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ABDULBASET MOHAMAD BADWAN,
                                    *Petitioner,*


          *v.*                                    Nos. 05-4412; 06-3404


ALBERTO R. GONZALES, Attorney General of the
United States,

                                    *Respondent.*

---

On Petition for Review of a Decision
of the Board of Immigration Appeals.
No. A20 958 967.

Argued: June 5, 2007

Decided and Filed: July 18, 2007

Before: NORRIS, GILMAN, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Russell R. Abrutyn, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. Keith I. McManus, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Russell R. Abrutyn, Marshal E. Hyman, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. Keith I. McManus, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

SUTTON, Circuit Judge. Abdulbaset Mohamad Badwan contends that the Immigration Judge, seconded by the Board of Immigration Appeals, abused his discretion in denying Badwan's unopposed motion for a continuance to present evidence in support of his application for adjustment of status. We agree, reverse and remand for further proceedings.

I.

Badwan is a 62-year-old native and citizen of Jordan. After legally entering the United States in 1974 as an F-1 nonimmigrant student, he received his Master's degree from Texas A&M University and his Ph.D. from Missouri University. In 1982, he married Linda Bryan, a United States citizen, in Missouri.

In 1984, Badwan returned to Jordan without Bryan, and on March 28 of that year he told Bryan he wanted a divorce. In Jordan, which applies Islamic or *Sharia* law to family-status issues, a husband may utter an oral declaration of divorce that becomes final after a three-month waiting period. At the end of the waiting period on June 27, Badwan's divorce from Bryan was thus "confirmed and became final" under Jordanian law. JA 52.

On July 8, 1984, Badwan married Sabah Al-Shanti, a Jordanian citizen. In 1996, Badwan returned legally to the United States as a B-2 nonimmigrant visitor. In 1998, he changed his status to an H-1B1 nonimmigrant worker, which was valid through February 13, 2001. Badwan, his wife and their four children simultaneously filed applications for adjustment of status on December 7, 2000. His wife based her application on an approved Petition for Alien Relative (I-130), which her father, a U.S. citizen, had filed on her behalf. Badwan and the four children filed derivative applications for adjustment of status. In 2002, the Immigration and Naturalization Service—now the Department of Homeland Security—granted lawful permanent resident status to Al-Shanti and to the four children but denied Badwan's application for adjustment of status.

The government initiated removal proceedings against him. Badwan conceded removability and sought relief in the form of an adjustment of status to become a lawful permanent resident. The government responded that Badwan was ineligible for relief because he had not presented sufficient evidence of a valid divorce from Bryan—because in particular he had failed to obtain a proper translation of the divorce document, *see* 8 C.F.R. § 1003.33, and the notification of divorce referenced in the document was not submitted to the court. Badwan moved for a continuance so he could correct the flaws in his application and submit a memorandum demonstrating the legality of his divorce under Jordanian law. The government did not oppose the motion, but the IJ nonetheless denied it because Badwan had failed to submit a properly documented application for adjustment of status in the first instance and because the IJ felt compelled to handle the case "as expeditiously as possible." JA 120; *see* JA 129–30. The IJ rejected Badwan's application for adjustment of status and granted him voluntary departure within 60 days. The BIA, through a one-judge order, rejected Badwan's appeal, and the BIA denied Badwan's later motion to reopen. Badwan appealed both orders, we consolidated them for appeal and we now need address only the IJ's denial of his motion for a continuance.

## II.

### A.

When, as in this case, the BIA adopts the IJ's ruling without explanation as to a particular claim, we review the IJ's ruling as the final agency decision. *See Singh v. Ashcroft*, 398 F.3d 396, 400–01 (6th Cir. 2005) (directly reviewing the IJ decision where the BIA issued "a one-page order[] apparently adopting the reasoning previously set forth by the IJ" with respect to a claim); *see also Berri v. Gonzales*, 468 F.3d 390, 399 (6th Cir. 2006). The government does not contest our authority to review the decision of an IJ denying a motion for a continuance. *See Abu-Khaliel v. Gonzales*, 436 F.3d 627, 631–34 (6th Cir. 2006) (explaining our jurisdiction to review such orders).

### B.

An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. And we review the IJ's denial of a continuance for abuse of discretion, looking to "whether the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Abu-Khaliel*, 436 F.3d at 634 (internal quotation marks omitted).

In this case, the IJ denied the continuance motion on two grounds: (1) Badwan's failure to present sufficient evidence to establish his eligibility for adjustment of status and (2) the need to

handle the case "as expeditiously as possible." JA 120. Modest though the requirement of providing a "rational" explanation is, these rationales do not suffice in this instance.

As an initial matter, when Badwan asked for a continuance to shore up the documentary support for his application, the government told the IJ that it "ha[d] no objection to opposing counsel's request." JA 128. While an IJ has no obligation to grant a continuance whenever the parties agree to one, the government's position demonstrates at a minimum that, as between the parties to the case, no adversarial interest was served by the denial. This lack of opposition not only eliminates a traditional ground for denying such motions—prejudice to the opposing party—but it also underscores the importance of the IJ's offering a coherent explanation as to why, from the perspective of the immigration courts, the motion should be denied.

The IJ's first ground for denying the continuance—Badwan's lack of sufficient evidence showing statutory eligibility for adjustment of status—does not do the trick. The IJ appeared to think it appropriate to deny Badwan's continuance on the ground that he had not yet satisfied the evidentiary requirements for obtaining an adjustment of status. But the absence of evidence—the absence of an adequately translated Jordanian divorce document, *see* 8 C.F.R. § 1003.33—was the reason Badwan sought a continuance in the first instance. Statutory ineligibility is "not a *reason* for denying . . . a continuance, but merely a statement of the obvious." *Subhan v. Ashcroft*, 383 F.3d 591, 593 (7th Cir. 2004). "To say that he was not yet eligible is . . . simply a statement of the procedural posture of the case." *Ahmed v. Gonzales*, 465 F.3d 806, 810 (7th Cir. 2006) (per curiam).

Why else, indeed, would an applicant seek a continuance but to obtain additional time to supply the necessary evidence and argument in support of his application? Taken at face value, the IJ's theory of granting continuances would seem to be that he will grant them whenever the applicant already has supplied the requisite evidentiary and legal support and will deny them whenever he has not. The only continuance motion he will grant, in other words, is the one that will never be filed; all others will be denied. That is not a rational basis for assessing these motions.

Nor was this a case in which the IJ fairly could doubt whether the applicant would be able to satisfy the translation requirement—if given more time. By any conventional assessment of the facts, there was every reason to suppose that Badwan would have little trouble dotting the "i"s and crossing the "t"s of the application requirements. Nothing in the record suggests that his first wife (Bryan) contests the 23-year-old divorce. And, indeed, between the time of the hearing and his appeal to the BIA, Badwan did obtain the proper documentation of his divorce; he just could not use it then because the BIA frowns on letting applicants supplement the record on appeal. Because Badwan amply showed a "likelihood of success" that he would be able to prove the validity of his divorce, the IJ thus could not deny the motion on the ground that the applicant had little prospect of correcting the problem—which presumably is why he did not offer this explanation. *Cf. El Harake v. Gonzales*, 210 F. App'x 482, 490 n.15 (6th Cir. Dec. 18, 2006) (affirming the IJ's denial of continuance where petitioner "did not provide any evidence that suggested that he had any likelihood of success" in attaining eligibility).

Badwan's prospects also did not turn on a pending decision that was out of his control, such as a labor certification or a relative's immigration forms—which presumably is why the IJ did not offer this explanation either. *Cf. id.* (noting that the alien did not show any "likelihood of success" because he was awaiting a decision on his spouse's I-130 petition filed on his behalf); *Ahmed v. Gonzales*, 465 F.3d 806, 810 (7th Cir. 2006) (noting that the alien "was waiting for his priority date on his sister's visa petition to become current"); *Zafar v. U.S. Att'y Gen.*, 461 F.3d 1357, 1363–64 (11th Cir. 2006) (noting the "'speculative' possibility that at some point in the future [the petitioners or their relatives] might have received . . . labor certifications"); *Khan v. Att'y Gen.*, 448 F.3d 226, 234 (3d Cir. 2006) (stating that the alien was waiting for his wife's pending labor certification).

The other ground offered by the IJ for denying the motion—administrative efficiency—also falls short. "Well," the IJ explained, "I think we have to handle that . . . in an expeditious manner as expeditiously as possible, given the case completion rules of the Court, and the Court's directive to complete cases," JA 120, and "I'd like to be helpful, but we're under severe constraints in terms of making certain that cases are handled in an expeditious manner and I'm handling the Detroit docket and I think [I'm] constrained to try to complete this case," JA 129.

As appellate judges who frequently review these cases, we understand—and indeed have some empathy for—the burgeoning case load IJs face, and accordingly we quite appreciate the imperative to decide these cases in a timely manner. Had Badwan previously sought a continuance and yet still failed to satisfy the translation requirement, to use one example, we might well understand an IJ's response that "enough is enough." But that is not what happened. So far as the record shows and so far as the parties have argued, this was Badwan's first request for a continuance. As a review of Badwan's submitted divorce document shows, he made a good faith attempt to satisfy the documentation requirement in a difficult situation—Jordanian law, recall, respects an *oral* divorce—and learned during the hearing that the IJ thought that the requirement had not yet been satisfied.

More critically, granting a continuance would not have been—it could not have been—a but-for cause of delay in granting Badwan's application for adjustment of status. At the hearing, the government acknowledged that it had not yet completed the necessary background check on Badwan. In other words, even if Badwan had presented a perfectly acceptable application, the IJ still could not have granted it at that point. Both parties, it turned out, needed additional time to prepare the proper paper work in connection with the application, and yet the IJ punished just one of them—Badwan. Expeditiousness for its own sake may or may not be a legitimate ground for denying a continuance; but expeditiousness not even for its own sake hardly amounts to a rational explanation.

Neither was this a time to worry that the applicant was manipulating the immigration process. Badwan and his second wife have been in a state of marriage (so they thought) for the last 23 years, and that marriage has produced four children. Nothing suggests that this was a mercenary marriage. Still less does this 62-year-old man fit the profile of someone who found an eleventh-hour bride to trick the immigration authorities into letting him stay in the country. *Cf. Abu-Khaliel*, 436 F.3d at 629 (noting that petitioner married his second wife five days before his rescheduled removal hearing); *El Harake*, 210 F. App'x at 484 (noting that petitioner married a U.S. citizen after his first removal hearing). Remember that Badwan first married an American in this country, then he left her and the country for Jordan and a Jordanian wife nearly a quarter century ago. That is not the story of a scheming immigrant applicant.

When all is said and done, Badwan at most made the mistake of not submitting properly translated divorce papers. This was Badwan's first request for a continuance, the motion was not opposed and Badwan had not otherwise dragged his feet in the proceedings. Nor did Badwan provide the IJ with any other reason courts have recognized as proper for denying a continuance, such as failing to apply for adjustment of status on a timely basis, posing a security threat to the United States or engaging in criminal activity. *See Subhan*, 383 F.3d at 593–94; *see also Abu-Khaliel*, 436 F.3d at 634–35.

The government argues that Badwan was already on notice of the need to submit sufficient evidence in support of his application because the INS earlier had denied Badwan's application in 2002 based on a "lack of evidence showing a valid divorce." JA 122. But the IJ did not base his decision on that ground. When reviewing a denial of a continuance, we look to the "stated" and credited reason for the IJ's decision; we do not, unlike, say, rational-basis review under the Equal Protection Clause, *see FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993), hypothesize

rational grounds upon which the IJ might have acted. *See Subhan*, 383 F.3d at 594 (requiring a "stated reason" from the IJ); *see also Abu-Khaliel*, 436 F.3d at 634–35 (noting the reasons offered by the IJ). The record, at any rate, does not show the similarity or dissimilarity between the alleged problem with the divorce papers in the separate denials of his application—one by the INS, one by the IJ.

For the first time at oral argument, the government also argued that Badwan failed to challenge the IJ's decision before the BIA and thus did not exhaust the issue. The record indicates otherwise: Badwan alleged in his notice of appeal to the BIA that the IJ erred in refusing to grant a continuance, JA 13; he noted the error in his statement of the case in his BIA brief, JA 40; and he argued generally in his BIA brief that the IJ "erred as a matter of law and ignored the evidence in the record," JA 42, which, given his inclusion of the continuance in his statement of the case, plausibly incorporates the continuance in his claim of error. The government's brief in this court, at any rate, washes away any doubt about our authority to reach the issue. The brief acknowledged that Badwan had appealed the continuance decision to the BIA, noting in a section of its brief entitled "Petitioner's Appeal to the BIA": "Furthermore, Petitioner argued that the immigration judge erred in refusing to grant a continuance to allow [him] to submit the requested translations . . . ." Gov't Br. at 9 (internal quotation marks omitted). The government then argued the merits of the continuance claim throughout its brief to us, Gov't Br. at 13, 17–19, without so much as hinting that the issue was not properly raised before the BIA. Under these circumstances, even if we were to assume that Badwan did "fail[] to exhaust his administrative remedies as is required, that claim was not raised by the government on appeal and is therefore waived." *Urbina v. Warden*, 270 F.3d 292, 295 n.1 (6th Cir. 2001).

III.

For these reasons, we reverse and remand for further proceedings.