**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0558n.06
Filed: September 11, 2008

**No. 07-3646**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| FLORENCIO RAMIREZ-FELIPE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| MICHAEL B. MUKASEY, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before: MARTIN, ROGERS, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Florencio Ramirez-Felipe seeks relief from an order of the Board of Immigration Appeals (BIA) denying his applications for asylum and withholding of removal and his claim under the Convention Against Torture. For the reasons that follow, we deny the petition.

I.

A native of Boxancan, Guatemala, Ramirez-Felipe came to the United States in 1993, three years before the end of the decades-long Guatemalan civil war. Although he filed an application for asylum in 1993, he never attended an asylum interview and remained in the United States without a grant of asylum and without filing a new application for the next twelve years. In 2005, he filed a new application requesting asylum and withholding of removal and applied for voluntary departure.

At a hearing before an Immigration Judge (IJ), Ramirez-Felipe testified that in the mid-1980s, when he was 11, his mother and three brothers were murdered, and about a month later his father was murdered on the road outside his family's village. Ramirez-Felipe had "no idea" why his parents and brothers were killed and described the assailants simply as "strangers" who came to their house. JA 136, 139. In 1990, Ramirez-Felipe was conscripted into the government's civil patrol, and he completed his required service of two-and-a-half years before coming to the United States.

The IJ found that Ramirez-Felipe's testimony was inconsistent with his written application. Among other inconsistencies, the IJ noted that Ramirez-Felipe's written application said that his parents and brothers were killed by the government security forces for being guerrilla sympathizers, while his testimony said that he had "no idea" why his parents and brothers were killed. JA 139. The IJ ultimately denied each of Ramirez-Felipe's applications, holding that (1) due to the inconsistencies between his testimony and his written application, he was not "fully credible," JA 80, (2) he did not establish a connection between the violence against his family and any protected ground, (3) even if he had proven persecution on account of a protected ground, the end of the civil war in 1996 meant that "conditions have changed to such an extent that the respondent no longer has a well-founded fear of persecution if he were to return to Guatemala," JA 85, (4) the failure of his application for asylum doomed his application for withholding of removal, (5) he provided no evidence of past torture and failed to establish that he would more likely than not face torture if he returned to Guatemala and (6) he made no showing that he was eligible for voluntary departure.

The BIA affirmed. In a brief opinion, it noted that Ramirez-Felipe did not show that his family members' murders were related to any protected ground, and that in light of changed country conditions he did not show that he would be subject to harm if he returned to Guatemala.

## II.

In his sole assignment of error, Ramirez-Felipe argues that the IJ's credibility determination was not based on substantial evidence. The argument contains at least three serious flaws. First, even if he could show that the IJ's credibility determination was unsupported, that would not get him anywhere. While the IJ premised its denial of asylum (and withholding of removal) in part on an adverse credibility determination, the IJ and BIA, in denying these claims, also relied (1) on the absence of any connection between the murders of his family members and a protected ground for asylum and (2) on the existence of changed country conditions brought about by the end of the Guatemalan civil war. Having waived any challenges to these additional explanations for the IJ's and BIA's decisions, *see Badwan v. Gonzales,* 494 F.3d 566, 571 (6th Cir. 2007), Ramirez-Felipe necessarily cannot prevail even if he could show that the IJ's credibility decision was unsupported.

Second, even if Ramirez-Felipe had challenged the other grounds for the IJ's and BIA's decisions and had challenged the denial of his torture claim, he still would come up short. Substantial evidence supports the IJ's determination that, because of changed country conditions, Ramirez-Felipe no longer has a well-founded fear of persecution in his home country, *see* 8 C.F.R.

§ 208.13(b)(1)(i)(A), and substantial evidence supports the IJ's determination that Ramirez-Felipe does not qualify for relief under the Convention Against Torture.

To be eligible for asylum under 8 U.S.C. § 1158(b), an alien must prove that he is unable or unwilling to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," *id*. § 1101(a)(42)(A). Even if an applicant establishes past persecution, his application will be denied if there has been "a fundamental change in circumstances such that [he] no longer has a well-founded fear of persecution." 8 C.F.R. § 208.13(b)(1)(i)(A). Where the BIA adopts and affirms the decision by the IJ but adds its own commentary, we "directly review the decision of the IJ while considering the additional comment[s] made by the BIA." *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005).

In Ramirez-Felipe's written application, he suggested that the government attacked his family on account of their actual or imputed association with the guerrillas. *See* JA 206 ("When we returned [to our house] the next morning, we discovered that someone had taken our mother and two older b[r]others away. Other families in the village had recently been taken by Government Security Forces for being supposed guerrilla sympathizers."). But even assuming he is right about this, ample evidence shows that changed country conditions eliminate any well-founded fear of persecution that Ramirez-Felipe otherwise might have.

The 2004 State Department Report on Human Rights Practices in Guatemala says that the Government "generally respect[s] the human rights of its citizens," JA 253, and Ramirez-Felipe

himself admits that the war "calmed down" by the time he left Guatemala in 1993, which was still before the 1996 conclusion of the civil war, JA 149.

Perhaps more importantly, nothing indicates that, if Ramirez-Felipe returned to Guatemala, those engaged in any continuing violence would target him *because of* his past association with the guerrillas. Even an applicant for asylum who served in the civil patrol *and* for the guerrillas during the Guatemalan civil war, we have held, did not have an objectively reasonable fear of persecution upon his return—long after the conclusion of the war. *See Pascual v. Mukasey*, 514 F.3d 483, 488 (6th Cir. 2007). To the extent Ramirez-Felipe alleges persecution on account of a *mistaken* association with the guerrillas, it seems particularly unlikely that he has a well-founded fear of persecution. "Why would anyone today ascribe a mistaken anti-government or anti-guerrilla opinion to [the applicant]—given that the war ended over ten years ago . . . ?" *Id.* at 488. And although the State Department Report notes that there are still "credible reports of unlawful killings by security forces," JA 253, and "credible reports of individual police officers' involvement in kidnappings for ransom," *id.*, the report also says that there are "no *politically motivated* killings by the Government or its agents," *id.* at 254 (emphasis added), and "no reports of *politically motivated* disappearances," *id.* at 256 (emphasis added). Because it does not suffice that Ramirez-Felipe might be subject to random violence if he returned to his home country, and because there is no evidence that he would be subject to violence "*on account of* race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A) (emphasis added), his asylum application necessarily fails. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 624 (6th Cir. 2004).

5

The State Department Report is not Ramirez-Felipe's only problem. Any risk that he might be targeted due to his family's association with the guerrillas is diminished by his testimony that his sister Martha, who was in the house with his mother and brothers when they were killed, still lives in Guatemala, as do his four children and his other four sisters. "[T]he fact that members of his family," particularly his four children, "live in Guatemala makes it reasonable to expect him to be able to do so as well." *Pascual*, 514 F.3d at 489.

Ramirez-Felipe also argues that his past persecution was so severe that he is entitled to relief even if conditions in Guatemala have changed. *See In re Chen*, 20 I. & N. Dec. 16, 19 (BIA 1989). However, with respect to this claim, he still has not demonstrated that the past persecution was on the basis of a prohibited ground. Nor, for this reason and others, has he established a reasonable possibility of suffering other serious harm if returned to Guatemala. 8 C.F.R. § 1208.13(b)(1)(iii)(B).

Because Ramirez-Felipe cannot establish that he qualifies for asylum, he also cannot meet the more demanding requirements for withholding of removal. *See Yu v. Ashcroft*, 364 F.3d 700, 703 n.3 (6th Cir. 2004). Nor is there any evidence in the record suggesting that he "more likely than not" would "face torture if returned to Guatemala." JA 87–88.

III.

For these reasons, we deny the petition for review.