NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0753n.06
Filed: December 10, 2008

No. 07-3625

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LILJANA GJELUCI, ALBERT GJELUCI, KLAUDIO GJELUCI, and ANGJELA GJELUCI, )
)
)
Petitioners, )
)
v. )
)
MICHAEL B. MUKASEY, Attorney General, )
)
Respondent. )

ON PETITION FOR REVIEW FROM AN ORDER OF THE BOARD OF IMMIGRATION APPEALS

BEFORE: MARTIN and McKEAGUE, Circuit Judges; and COLLIER, Chief District Judge.[*]

**McKEAGUE, Circuit Judge.** The Petitioners sought asylum in the United States of America. After granting several continuances of their hearing, the Immigration Judge ("IJ") assigned to the Petitioners' application denied their request for another continuance. The Board of Immigration Appeals ("BIA") affirmed the IJ's ruling. On petition for review, we find that the BIA did not abuse its discretion, and, accordingly, we deny the petition.

I

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

The Petitioners, Liljana Gjeluci and her children, are natives and citizens of Albania who sought asylum in this country. Liljana and her husband, Albert, filed separate applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). The petition for review before us involves only Liljana Gjeluci's application filed on behalf of herself and her children.

At the master hearing in March 2003, Gjeluci admitted the factual allegations contained in the notice to appear and conceded removability. The IJ informed Gjeluci that there was a question about the authenticity of various documents submitted in support of the asylum application. The IJ set the next hearing for June 28, 2004.

On May 28, 2004, Gjeluci moved for a continuance. Because her husband had been granted asylum in August 2003, she and her children sought refugee/asylee status in connection with her husband's asylum status. Gjeluci asserted that it would be likely that she and her children would be accorded asylee status and would be eligible to have the removal action against them terminated. The IJ granted the motion and set the hearing for August 3, 2005.

On July 15, 2005, Gjeluci moved for a second continuance. She was still waiting to hear on her request for asylee status under her husband's grant of asylum, and had filed a mandamus action in federal court to order that the matter be adjudicated. She also indicated, however, that the government had questioned the authenticity of two medical documents submitted in support of both her and her husband's asylum applications, and that she had received a report about the documents from the U.S. consular investigator on June 20, 2005. She explained that she was taking steps to

have the medical documents and the information contained therein verified; however, that verification would not be available by the August hearing date. In another motion filed nine days later, Gjeluci further noted that the Chicago Asylum Office had issued an intent to revoke Albert's asylum as a result of the investigator's report about the medical documents.[1] The IJ granted a continuance and set the hearing for December 2, 2005.

At the December 2, 2005, hearing, the IJ initially asked whether authenticated documents had been submitted in support of Gjeluci's application. Gjeluci's legal counsel indicated that the documents had been sent to the Chicago Asylum Office in connection with Albert's revocation proceeding in August 2005 and that office still had possession of the documents. Counsel asked that the IJ grant a continuance until Albert's matter was resolved.

The IJ denied the request for a continuance. The IJ noted that the hearing had been delayed several times, that Gjeluci's counsel did not have any information about when Albert's case would likely be resolved, and that the government was ready to proceed. The IJ further noted that Gjeluci's counsel had ample notice of the necessity of submitting authenticated documents in support of the asylum application. Moreover, Gjeluci's counsel had failed to follow local rules requiring that any motion for continuance be made in writing and at least fourteen days before the hearing. The IJ concluded that there were no extraordinary or unusual circumstances justifying another continuance.

---

[1]The status of that action is not in the record before us.

Faced with the prospect of going forward with the hearing and the possibility of a frivolous-filing finding, Gjeluci withdrew the application.[2] She instead appealed the denial of a continuance to the BIA. The BIA dismissed the appeal, adopting and affirming the IJ's decision. The BIA further explained, "We have considered the respondents' contentions on appeal but we agree with the Immigration Judge's finding that the respondents' request for a continuance is correctly denied for the reasons stated in the Immigration Judge's thorough decision on this issue." *In re: Liljana Gjeluci et al.*, Nos. A95-149-215, -216, -217, -218, order at 1 (BIA May 2, 2007).

Gjeluci now petitions this court for review of the BIA's decision.

## II

When the BIA adopts the IJ's reasoning as its own, but makes an additional comment, we "directly review the decision of the IJ" as the BIA's own, "while [also] considering the additional comment made by the BIA." *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). Here, the comment by the BIA simply reiterates its agreement with the IJ's analysis, so we focus on the IJ's decision as the substantive ruling on review.

The IJ may continue a hearing "for good cause shown." 8 C.F.R. § 1003.29. We review the denial of a request for continuance under an abuse-of-discretion standard. *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007) (citing *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006)).

---

[2]Had the IJ concluded that Gjeluci's petition was based on a "deliberately fabricated" claim, 8 C.F.R. § 1208.20, Gjeluci and her children would have been permanently ineligible for asylum, 8 U.S.C. § 1158(d)(6).

Whether we, sitting de novo, would have arrived at the same decision as the IJ is immaterial—under an abuse of discretion standard, the IJ has a considerable berth in which to make a reasoned decision. Only if the decision "'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination'" will we find an abuse of discretion. *Id.* (quoting *Abu-Khaliel*, 436 F.3d at 634).

In *Badwan v. Gonzales*, 494 F.3d 566 (6th Cir. 2007), this court determined that the BIA had abused its discretion in denying a continuance to a petitioner. The court in that case first noted that the government had no objection to a continuance. At a minimum, therefore, this showed that "no adversarial interest was served by the denial." *Badwan*, 494 F.3d at 568. The court further found that the immigration judge mistakenly relied upon the petitioner's lack of evidence to show a valid divorce as a viable ground for denying a continuance premised on the need to gather that very evidence. In other words, "'[t]o say that [a petitioner] was not yet eligible [for asylum] is . . . simply a statement of the procedural posture of the case,'" not a reason to deny a continuance. *Id.* at 569 (quoting *Ahmed v. Gonzales*, 465 F.3d 806, 810 (7th Cir. 2006)). Finally, on the other ground relied upon by the immigration judge—administrative efficiency—the court was likewise dismissive. The court noted that this was the petitioner's first request for a continuance and that he had made a good-faith attempt to satisfy the documentation request before the hearing. *Id.* at 570. The court stated, however, that the case might have come out differently had the petitioner sought an earlier continuance and yet still failed to satisfy the evidentiary requirement. *Id.*

This case differs materially from *Badwan*. The IJ had already granted Gjeluci two continuances on her individual hearing, one of which to allow Gjeluci sufficient time to get her

documentation in order. Thus, the IJ was not focused myopically on expediency to the detriment of fairness. Moreover, Gjeluci's counsel knew about the procedures for submitting a written motion for a continuance, but decided not to follow them here because he thought that the husband's revocation action would be resolved by the December hearing. That was a strategic decision made by counsel, albeit a decision that in retrospect turned out to be a poor one. The IJ correctly noted that Gjeluci and her counsel knew about the need for the authenticated documents well in advance of the hearing, and that the documents would be especially important given the report calling into question the authenticity of two medical documents. Finally, the IJ rationally found nothing extraordinary or unusual to excuse Gjeluci's violation of the local rule. Thus, the IJ provided a rational explanation for denying a continuance, adhered to the established policy governing continuances, and does not appear to have rested on an impermissible basis.

## III

Finally, we briefly discuss a matter not raised by either party, mootness. This petition for review comes to us in an interesting procedural posture. The only matter raised in the petition is whether the IJ abused her discretion in denying a third continuance. However, Gjeluci voluntarily withdrew her application for asylum, withholding of removal, and relief under CAT. It is unclear, therefore, what relief would be available to Gjeluci were we to find that the IJ abused her discretion. In *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865 (9th Cir. 2003), the Ninth Circuit was confronted with a case in which a petitioner had tried to reinstate a previously withdrawn application for asylum relief. The government argued on petition for review that there was no law governing reinstatement,

and, therefore, the court did not have jurisdiction. The Ninth Circuit rejected the government's position, finding that a request for reinstatement of a withdrawn asylum application was analogous to a petition to reopen a previously closed asylum case. *Id.* at 869; *see also Vucaj v. Gonzales*, 150 F. App'x 444, 452-53 (6th Cir. 2005) (applying an abuse-of-discretion standard to the petitioner's claim for reinstatement of a previously withdrawn asylum application).

The government has not argued in the present case that Gjeluci's petition is moot as a result of her decision to withdraw her asylum application. Given the government's silence on mootness as well as our determination that the IJ did not abuse her discretion in denying a continuance, we assume without deciding that Gjeluci could move to reinstate her voluntarily withdrawn asylum application were we to grant her petition, i.e., that her petition for review before us is not moot.

**IV**

Finding no abuse of discretion on the IJ's denial of a third continuance, we **DENY** the petition for review.