**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0634n.06

Case No. 16-4121

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 15, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CLEMENCIA YOLANDA GARCIA-MORALES, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS III, U.S. Attorney General, | ) | APPEALS |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Border Patrol agents arrested Clemencia Yolanda Garcia-Morales when she illegally crossed the border from Mexico into Arizona. She applied for asylum. An immigration judge rejected her application after she failed to prove that she was a Guatemalan national. The Board of Immigration Appeals affirmed the immigration judge's decision and denied her motion to remand. We deny the petition for review.

In January 2014, Border Patrol agents apprehended Garcia-Morales in Arizona. She told them that she had come to the United States to find work and did not fear being returned to her home country. On March 17, 2014, she attended a hearing in which she raised her intention to apply for asylum. After being released on bond, she relocated to Memphis, Tennessee. By November, she was represented by counsel from the Memphis Immigration Advocates. She

appeared with her counsel before an immigration judge on December 2, 2014. He scheduled her asylum application hearing for May 20, 2015. On April 21, 2015, Garcia-Morales moved for a continuance to give her more time to "obtain documentation from Guatemala." A.R. 167. The judge granted the continuance and scheduled the application hearing for August 20, 2015.

At the August hearing, Garcia-Morales said that she feared returning to Guatemala for two reasons. A man in Guatemala raped her when she was 16 and had harassed her in the years since. In addition, she feared her sister-in-law, who had threatened her, extorted money from her family, and was affiliated with a gang.

The immigration judge asked Garcia-Morales about her identification documents. She admitted she did not have any Guatemalan identification and that she had not asked her Guatemalan father to procure a copy of her birth certificate until a week or two before the hearing. The judge asked the government if it had any identification documents for Garcia-Morales. The government produced a Mexican birth certificate for a woman born the same year as Garcia-Morales but with a different name on the certificate, found in a backpack Garcia-Morales had been carrying when the border agents arrested her.

She asked for a second continuance to give her more time to obtain a Guatemalan birth certificate. The judge denied the motion and rejected her application because she had not shown she was a Guatemalan national.

Garcia-Morales appealed to the Board of Immigration Appeals. She attached a copy of a Guatemalan birth certificate, issued in 2015, that she received after her immigration hearing. The Board affirmed the immigration judge's decision to reject the application, deny the continuance, and designate Mexico as the primary removal country. It also denied her motion to remand the case. This petition for relief followed.

*Denial of asylum.* We treat Board opinions as final agency determinations. But we include the immigration judge's decision in our review where the Board adopts the immigration judge's reasoning, as happened here. Review is deferential. We respect the Board's (and immigration judge's) findings of fact unless the record requires otherwise. *See* 8 U.S.C. § 1252(b)(4)(B); *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

To warrant asylum, Garcia-Morales must be a refugee under the Immigration and Naturalization Act. 8 U.S.C. § 1158(b)(1). That requires her to prove she is from the country from which she seeks asylum. *See* 8 U.S.C. § 1101(a)(42); *In re O-D-*, 21 I. & N. Dec. 1079, 1083 (BIA 1998). An applicant's testimony as to her nationality may suffice where her testimony is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account." *See In re M-D-*, 21 I. & N. Dec. 1180, 1182 (BIA 1998). However, a failure to produce reasonably available corroborating evidence may justify an adverse finding. *See Shkabari v. Gonzales*, 427 F.3d 324, 331 (6th Cir. 2005).

The record supports the Board's finding that Garcia-Morales did not show that she was a Guatemalan national. She had no official Guatemalan identification at the time of the hearing. She did not collect that evidence during the months leading up to the hearing before the immigration judge, even after being given a continuance to allow more time to collect documentation supporting her asylum claim. Though Garcia-Morales submitted letters from her family, her sister's Guatemalan passport, and court documents from proceedings against her sister-in-law, such documents do not compel the conclusion that she was a Guatemalan national.

This missing evidence was important because Garcia-Morales had two backpacks at her arrest in Arizona, one of which included a Mexican birth certificate. Although neither the Board nor the immigration judge expressly made a credibility finding, both pointed to the Mexican

birth certificate as reason to require greater corroboration from Garcia-Morales. The Board and the immigration judge determined that a Guatemalan identity document was reasonably available and should have been timely provided. The record does not compel the conclusion that the Board and the immigration judge erred in requiring greater corroboration to show that she was from Guatemala.

Garcia-Morales points out that the record does not contain the Mexican birth certificate the immigration authorities mentioned in their credibility determination. But the hearing transcript confirms that the Mexican birth certificate was in her file, that the immigration judge reviewed the birth certificate, considered it at length, and shared it with Garcia-Morales' counsel, all without protest as to its contents or objection as to its use. Having failed to object to its contents or use then, she has forfeited any objection now. *Ayyoub v. INS*, 93 F. App'x 828, 834 (6th Cir. 2004).

Even now, Garcia-Morales does not argue that the immigration judge's consideration of the document was improper. Her *pro se* brief does not mention it, and her counseled brief does nothing more than mention, in the fact section of the brief, that the birth certificate was not in the record. A party forfeits an issue that it does not raise in its briefs. *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009).

*Motion for continuance.* Garcia-Morales argues that the immigration judge and the Board abused their discretion when they denied her second motion for a continuance. To obtain a continuance to collect corroborating evidence, the petitioner must show good cause and make "a reasonable showing that the lack of preparation occurred despite a diligent good faith effort to be ready to proceed" as scheduled. *In re Sibrun*, 18 I. & N. Dec. 354, 356 (BIA 1983); *see also Badwan v. Gonzales*, 494 F.3d 566, 570 (6th Cir. 2007); 8 C.F.R. § 1003.29. A prior

continuance may justify a denial, *see Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008), as may the opposition of the government, *In re Hashmi*, 24 I. & N. Dec. 785, 791 (BIA 2009); *Badwan*, 494 F.3d at 568. We may reverse a continuance decision only if it is an abuse of discretion, which is to say a decision "made without a rational explanation," that "inexplicably departed from established policies," or that "rested on an impermissible basis such as invidious discrimination." *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006).

The immigration authorities did not abuse their discretion when they found that Garcia-Morales had not put a good-faith effort into establishing proof of her nationality. She appeared before an Arizona immigration judge for a master calendar hearing on March 17, 2014, when the government told her it would seek her removal and she explained that she would seek asylum. In opting to seek asylum, she assumed the statutory burden of proving the elements of the claim, including the burden of proving that she was a Guatemalan national. *See* 8 U.S.C. § 1158(b). The relevant asylum statute notes that the trier of fact might require her to present corroborating evidence establishing her nationality. *Id.*

Garcia-Morales moved to Memphis, where she was represented by counsel from the Memphis Immigration Advocates no later than November 5, 2014. On December 2, 2014, she appeared before an immigration judge who scheduled the asylum hearing for May 20, 2015. In April 2015, her counsel asked the immigration court to grant her a continuance until August 20, 2015, to gather evidence to support her asylum claim. Yet she did not ask her father to seek a copy of her birth certificate from the authorities until a week or two before the August 20 hearing, and she gave the immigration judge no reasonable explanation for the delay. On this record, we cannot say that the immigration authorities abused their discretion when they found that she did not put in a good-faith effort to collect the evidence. On top of that, Garcia-Morales

had already requested and received one continuance without collecting the necessary evidence, which alone can justify denying a second request for a continuance. Add to that the government's fair opposition to a second one, and the absence of an abuse of discretion becomes clear.

Garcia-Morales claims that the Board departed from established immigration policy and the Immigration and Naturalization Act in denying the continuance without considering whether doing so would prejudice her claim on the merits. But a petitioner must show a good-faith effort to prepare for a hearing *and* that she would suffer prejudice in the absence of a continuance. *See In re Sibrun*, 18 I. & N. Dec. at 356–57. Because the immigration authorities did not abuse their discretion when they ruled that she had not met the first requirement, they did not err when they chose not to address the second one.

Her broader policy argument does not help either. While the United States may have a general policy favoring refugee protection, that same policy places the burden of proof on the applicant and requires her to take reasonable steps to collect evidence to support her claim. *See* 8 U.S.C. § 1158(b); *In re Sibrun*, 18 I. & N. Dec. at 356–57. The immigration authorities reasonably decided that Garcia-Morales did not fulfill her responsibilities.

*Motion to remand.* Garcia-Morales separately claims that the Board abused its discretion when it denied her motion to remand the case so that the immigration judge could review the Guatemalan documents she obtained after the hearing. While the immigration regulations do not mention motions to remand, they do speak to motions to reopen. We generally treat them the same. *Ahmed v. Mukasey*, 519 F.3d 579, 585 n.7 (6th Cir. 2008). The Board may grant a motion to remand for consideration of new evidence only if it appears that the evidence is material and

could not have been discovered before the hearing. *See* 8 C.F.R. § 1003.2(c)(1). The same abuse-of-discretion standard applies. *Haddad*, 437 F.3d at 517.

No such abuse occurred here. Garcia-Morales never adequately explained why she did not ask her father to retrieve the certificate from the Guatemalan authorities before her hearing. And what happened after the hearing confirms that she could have submitted the certificate in time. She received it in the mail and submitted it to the Board about two months after she asked her father to track it down. The Board reasonably found that Garcia-Morales could have obtained the certificate by the hearing date had she acted with the due diligence expected of applicants. *See Sakhawati v. Lynch*, 823 F.3d 852, 857–61 (6th Cir. 2016).

Garcia-Morales responds that the Immigration and Naturalization Act and its regulations do not *require* the Board to deny a motion to remand when the new evidence was reasonably available before the formal hearing. Perhaps so. But that does not establish an abuse of discretion when the Board denies such a motion. Our precedents at any rate say that motions to remand should be treated like motions to reopen, which the regulations do address and which do suggest that the Board should deny motions like hers. *See Ahmed*, 519 F.3d at 585 n.7; *In re Yewondwosen*, 21 I. & N. Dec. 1025 (BIA 1997). Nothing in the Act or regulations required the Board to grant a motion to remand in this setting.

Garcia-Morales points to a pair of Board decisions that purportedly remanded cases like hers. Even aside from their unpublished (and non-precedential) status, both are distinguishable. The short opinion in *Matter of Rupert Barrington Richards* offers no explanation why the Board thought the new evidence justified a remand. A34 090 101 – Houston, 2007 WL 1194787 (BIA Mar. 30, 2007). And *Matter of Julio Lopez-De Dips* remanded the application because the new evidence, a visa petition filed by the petitioner's citizen wife, was not available prior to trial. In

7

that case, the petitioner had married three days before the final hearing and could not reasonably have submitted the new evidence in time.  A206 011 402 – Atlanta, 2016 WL 1084489 (BIA Mar. 1, 2016).  Neither case advances Garcia-Morales' position.

For these reasons, we deny her petition.